UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LaMONICA McIVER | Hon. Jamel K. Semper<br><br>Crim. No. 2:25-cr-00388-JKS |

**MEMORANDUM OF LAW IN SUPPORT OF CONGRESSWOMAN McIVER'S
<u>MOTION TO COMPEL DISCOVERY</u>**

August 15, 2025

ARNOLD & PORTER KAYE SCHOLER LLP
One Gateway Center
Suite 1025
Newark, NJ 07102

*Counsel for Congresswoman LaMonica McIver*

On the Memorandum:

Paul J. Fishman
Lee M. Cortes, Jr.
John M. Fietkiewicz
Samuel F. Callahan
Orion de Nevers
Amanda J. Raines

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 4

  I. Applicable Legal Standards ........................................................................................ 4

    A.    Discovery Obligations ................................................................................ 4

    B.    Relevant Elements of Section 111(a)(1) .................................................... 4

  II.   The Court Should Order the Government to Produce Discovery ........................... 6

    A.    Surveillance Footage ................................................................................... 6

    B.    Missing Body Worn Camera Footage and Related Materials .................. 8

    C.    Government Communications Contradicting the Charges ..................... 10

    D.    Internal Policies ........................................................................................ 11

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................................................ 3, 4, 11

*Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263 (3d Cir. 2016) ................................. 4

*U.S. v. Ayers*, 924 F.2d 1468 (9th Cir. 1991) ............................................................................... 8

*U.S. v. Coles*, 511 F. Supp. 3d 566 (M.D. Pa. 2021) ................................................................... 8

*U.S. v. Dean*, No. 3:21-CR-90, 2021 WL 4137500 (M.D. Pa. Sept. 10, 2021) ............................ 8

*U.S. v. Goodwin*, 440 F.2d 1152 (3d Cir. 1971) ...................................................................... 5, 6

*U.S. v. Green*, 543 F. App'x 266 (3d Cir. 2013) .......................................................................... 5

*U.S. v. Papagni*, Crim. No. 18-336, Dkt. 94, (D.N.J. Jan. 30, 2019) ....................................... 5, 6

*U.S. v. Sharp*, 2021 WL 6618813 (E.D.N.C. Sept. 20, 2021) .................................................... 8

*U.S. v. Syed*, No. 2:22-CR-00818 (BRM), 2025 WL 635300 (D.N.J. Feb. 27, 2025) ................. 4

**Statutes**

18 U.S.C. § 111(a) ................................................................................................................ passim

28 U.S.C. § 530B ........................................................................................................................ 3

**Other Authorities**

Eleventh Circuit Pattern Jury Instructions (Apr. 15, 2024) ........................................................... 5

Justice Manual § 9-5.001 .............................................................................................................. 4

**Rules**

N.J. Rule of Professional Conduct 3.8(d) ..................................................................................... 3

Rule 16 of the Federal Rules of Criminal Procedure ................................................................ 3, 4

## INTRODUCTION

The government has made a single production of discovery materials to Congresswoman McIver. That production consisted of two categories of video evidence: (a) footage from two fixed-position surveillance cameras from the exterior of Delaney Hall; and (b) footage from eleven body-worn cameras (BWC) that were carried by ICE or HSI personnel on May 9. The government provided no other material relating to the May 9 events at Delaney Hall.

The government's production was deficient in multiple ways. For example, other than the two surveillance videos that provided nearly identical views of the Delaney Hall front parking lot, the government produced no other videos from Delaney Hall's interior or exterior. The government also did not identify the federal officers and agents present at Delaney Hall, which of those officers or agents present were equipped with BWCs and, of those, which BWCs did not capture any video on May 9 (or the reasons for that omission).

In two letters from her counsel to the U.S. Attorney's Office, Congresswoman McIver raised these and others deficiencies and requested additional discovery. *See* Cortes Decl. Exhibits K and L (7/30/25 and 8/6/25 letters). The government has since agreed orally and in writing to obtain and produce some additional materials, but has not yet done so.[1] *See* Cortes Decl. Exhibit M (8/11/25 letter). However, the government has completely declined to provide several other

---

[1] The government agreed to seek to obtain and produce: (a) surveillance footage from Delaney Hall showing Congresswoman McIver's tour of the facility after Mayor Baraka was arrested; (b) identities and rank of any officers and agents present "at the time of the arrest of Mayor Baraka," pursuant to a forthcoming protective order about which the parties will meet and confer; (c) the identification of which individuals present at Delaney Hall on May 9 were equipped with a BWC; (d) car dashboard camera footage that "captures any material activity from May 9, 2025"; and (e) maps, diagrams, or plans of the Delaney Hall facility *See* Cortes Decl. Ex. M at 2. The government also agreed to consider providing the defense with the opportunity to inspect Delaney Hall. In the event the government does not make a meaningful production of the promised materials, Congresswoman McIver may seek further relief from the Court.

1

categories of requested information, asserting broadly in its response: "To the extent this letter does not provide the requested materials, it is the position of the Government that those materials do not fall within the ambit of Rule 16."

The government is incorrect, as an examination of each request shows:

*First*, Congresswoman McIver is entitled to all surveillance video capturing the entire period during which she was at Delaney Hall. Evidence related to events before and after the actual charged conduct is highly relevant to provide context, to show the Congresswoman's state of mind, and to demonstrate the contemporaneous reactions of the alleged victims and their colleagues. After all, the Congresswoman McIver and the two other Representatives were given a tour of Delaney Hall after she allegedly forcibly (1) assaulted; (2) resisted; (3) opposed; (4) impeded; (5) intimidated; or (6) interfered with the alleged law enforcement victims just steps away.

*Second*, there were as many as 15 uniformed law enforcement officers or agents with BWCs on site; several, however, apparently made no recordings. The lack of videos from those who were wearing BWCs appears to be inconsistent with applicable ICE policy and instructions at the scene from a supervisory agent. Indeed, at least two critical individuals have no BWC footage: the law enforcement agent identified in the Indictment as V-2, who is the alleged victim in Count 2; and another agent who appeared to violently shove Congresswoman McIver in the chest as she attempted to return inside the Delaney Hall gate. A government agent's deliberate failure to activate a BWC contrary to policy and instructions clearly is relevant to the preparation of the defense. In addition, there were other agents who had no BWC at all.

*Third,* because Congresswoman McIver is alleged to have forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with one or more federal officers, any evidence that is inconsistent with those allegations is unquestionably both relevant to the defense under Rule 16

and favorable under *Brady*. To that end, Congresswoman McIver is entitled to any and all government communications that indicate or show a *lack of* fear, harm, or intimidation on the part of every officer and agent who was present on the scene—especially, but not only, those whom the indictment identifies as victims in all three counts. Thus, if it has not done so already (and it should have), the government must preserve, collect, and then review all of the officers' and agents' contemporaneous communications, throughout the entire episode at Delaney Hall and afterwards, across all communication platforms (text, voice, instant, chat or email—sent via either Telegram, Signal, or any other communications method, application, or medium)—regardless of whether the accounts were official or personal.

*Fourth*, the video recordings are clear that the officers and agents at Delaney Hall created the physical chaos involved in arresting and handcuffing Mayor Baraka on a baseless trespass charge, as detailed in Congresswoman McIver's related Motion to Dismiss Based on Selective Enforcement and Prosecution, and Vindictive Prosecution. Congresswoman McIver's alleged actions can only be fully evaluated in light of the actions of those government officials. Consequently, Congresswoman McIver is entitled to certain information regarding federal government personnel present at Delaney Hall on May 9, and the internal policies that governed their conduct.

Because the government's discovery productions to date do not fulfill its obligations under Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and N.J. Rule of Professional Conduct 3.8(d) (applicable to all AUSAs pursuant to 28 U.S.C. § 530B), Congresswoman McIver moves that the Court compel the government to provide the requested discovery.

3

## ARGUMENT[2]

I. **Applicable Legal Standards**

   A. **Discovery Obligations**

Federal Rule of Criminal Procedure 16 requires the government to produce all "documents within the government's possession, custody, or control when the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(E). Evidence is material under Rule 16 where there is a "strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, or assisting impeachment or rebuttal." *U.S. v. Syed*, No. 2:22-CR-00818 (BRM), 2025 WL 635300, at *14–*15 (D.N.J. Feb. 27, 2025) (citations omitted).

In addition to Rule 16, *Brady* requires the government to disclose all evidence "favorable to the excused, either because it is exculpatory, or because it is impeaching." *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 284 (3d Cir. 2016) (citations omitted); *see also Brady*, 373 U.S. 83. Justice Department policy provides further instruction: prosecutors are to "disclose information that is inconsistent with any element of any crime charged" or that "establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal." Justice Manual § 9-5.001.

   B. **Relevant Elements of Section 111(a)(1)**

Each count alleges that the Congresswoman "did forcibly assault, resist, oppose, impede, intimidate, and interfere with" one or more federal officers pursuant to 18 U.S.C. § 111(a)(1). Counts 1 and 2 include the additional allegation that the Congresswoman's acts involved "physical contact with" individuals respectively identified as V-1 and V-2. Although Count 3 does not

---

[2] This motion relies upon the facts described in Congresswoman McIver's Motion to Dismiss Based on Selective Enforcement and Prosecution, and Vindictive Prosecution.

4

include a physical contact allegation, it also does not identify a particular alleged victim or victims. Instead, that count charges that the offense conduct was directed at unspecified "HSI Special Agents and ICE Deportation Offices." At trial, the government has the burden to demonstrate the elements of each count.

"Forcibly" modifies all six verbs in the statute. *U.S. v. Green*, 543 F. App'x 266, 272 (3d Cir. 2013) (citing *U.S. v. Goodwin*, 440 F.2d 1152, 1154 (3d Cir. 1971)). As one Judge of this Court instructed a jury in another Section 111(a) case, the force that the government must prove in cases involving physical contact must be "sufficient to overcome a victim's resistance." *U.S. v. Papagni*, Crim. No. 18-336, Dkt. 94, at 17–18 (D.N.J. Jan. 30, 2019) ("*Papagni* Jury Instructions"). "[P]assive resistance" is insufficient. *Goodwin*, 440 F.2d at 1154; *see also* Eleventh Circuit Pattern Jury Instructions (Apr. 15, 2024) ("A 'forcible assault' is an intentional threat or attempt to cause *serious bodily injury* when the ability to do so is apparent and immediate. It includes any intentional display of force that would cause a reasonable person to expect *immediate and serious bodily harm or death*.") (emphasis added).

Turning to the actus reus allegations, "assault" means "an unlawful attempt or threat to do injury to the person of another, when coupled with the apparent present ability to do so sufficient to put the person against whom the attempt or threat is made in fear of immediate bodily harm." *Papagani* Jury Instructions at 19. Accordingly, the "assault" charge requires the government to present evidence of the effect of the charged conduct on the alleged victims—specifically, whether the conduct placed the officers in "imminent apprehension" or "fear of immediate bodily harm."[3]

---

[3] There is a circuit split as to whether any conviction under 18 U.S.C. § 111(a)(1) requires proving "assaultive conduct." The Third Circuit has acknowledged the existence of this split but has not weighed in on it. *Green*, 543 F. App'x at 272 n.9. However, the district court in *Papagni* ruled that assaultive conduct was a necessary element of a § 111(a)(1) offense. *Papagani* Jury Instructions at 20. And it is premature for the Court to resolve any dispute now. Rather, for purposes of this

5

As a result, the contemporaneous descriptions of those who were present on the scene would be exculpatory if they describe the conduct in any benign or less serious way, or if they omit any reference to fear, danger, or injury.

Other allegations similarly require the government to show the effect on the alleged victims. For example, to "intimidate" means to "make [the officers] timid or fearful, to inspire or affect with fear, to frighten, to deter, or overawe." *Papagani* Jury Instructions at 20; *see also Goodwin*, 440 F.2d at 1154 (evidence that the defendant had "placed the agents in fear of danger" supported a finding of "forcible intimidation").

In short, the government's charges place the impact on the alleged victims squarely at issue. If those officers or agents displayed or communicated a lack of fear, harm, or intimidation, that information would tend to undermine the elements of the § 111(a)(1) charges and would undoubtedly be favorable to the defense. Accordingly, the Court should direct the U.S. Attorney's Office to collect and review every contemporaneous communication of the agents and officers, regardless of the medium, platform, or device on which they were made or received.

## II.     The Court Should Order the Government to Produce Discovery

### A.     Surveillance Footage

The government disclosed two limited surveillance videos, both providing a near identical view of the parking lot in front of the Delaney Hall security gate. Each video begins at an unspecified time *after* Congresswoman McIver and her colleagues arrived at Delaney Hall and ends at an unspecified time *before* they left. The government has provided no video from other portions of Delaney Hall, either in the front of the building or in the interior area of Delaney Hall

---

motion, the government has the obligation to provide all evidence that *might* or *tend* to be exculpatory related to the charged "assault."

6

where Congresswoman McIver and the other Members waited for over an hour *before* the Mayor's arrest and where they returned afterwards for a full tour of the facility.

To that end, the defense's discovery letter requested that the government provide "all interior and exterior surveillance footage of any events on May 9, beginning at least 10 minutes before Congresswoman McIver's arrival at Delaney Hall through at least 4:00 p.m., which is after she departed the facility's secured perimeter." Ex. K, Req. I.A. The government's response was inconsistent. On one hand, the government indicated that it would attempt to locate and produce "footage of the Representatives' tour of the Delaney Hall facility after the arrest of Mayor Baraka had taken place," though it disclaimed the relevance of such footage. On the other hand, the government claimed that it received these two surveillance videos from GEO Group (the private company that ICE has retained to operate Delaney Hall). However, the government claims that other GEO Group materials are not in the government's possession and suggests that the government has no other surveillance videos from stationary or fixed cameras. The government did not otherwise respond to Congresswoman McIver's request for more complete surveillance videos, apparently taking the position that this material is not relevant. Ex. M at 1 ("To the extent this letter does not provide the requested materials, it is the position of the Government that those materials do not fall within the ambit of Rule 16").

The government's response is puzzling. Even if GEO Group is not a member of the prosecution team (as the government's response suggests), it is difficult to believe that the government does not have access to or cannot demand the production of material that is in the custody of the private company that ICE has hired to incarcerate federal detainees. Surely the government has access to *all* the surveillance video from Delaney Hall on demand. And if the government can readily locate video footage from the period *after* Mayor Baraka's arrest, clearly

it can do so for all surveillance videos that captured *any* of the sequence of events at Delaney Hall involving Congresswoman McIver.

That footage is relevant to the defense and the Court should order the government to produce all surveillance videos from Delaney Hall. Under Rule 16, Congresswoman McIver is entitled to a complete picture of the events that transpired on May 9—before, during, and after she was present at the facility. It is not for the government to determine whether that material might be helpful; it is all probative, particularly since DHS's public statements about those events have been uniformly false. Furthermore, the footage is probative of Congresswoman McIver's state of mind, as well as the state of mind of the alleged victims and their colleagues. *See U.S. v. Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991) ("We have previously held that acts both prior and subsequent to the indictment period may be probative of the defendant's state of mind.") (internal citations omitted); *see also U.S. v. Dean*, No. 3:21-CR-90, 2021 WL 4137500, at *5 (M.D. Pa. Sept. 10, 2021) (admitting evidence that would "paint the picture for the jury as to the surrounding factual circumstances that lead to the alleged assault incident"). In particular, any video footage demonstrating or even suggesting a general lack of fear or intimidation on the part of federal personnel at Delaney Hall on May 9 is potentially favorable to the Congresswoman's defenses under Section 111(a) and exculpatory under *Brady*. The evidence is material, and the Court should order its production.

### B. Missing Body Worn Camera Footage and Related Materials

BWC footage is highly relevant discovery material. *See, e.g.*, *U.S. v. Sharp*, 2021 WL 6618813, at *8 (E.D.N.C. Sept. 20, 2021) (body-worn camera recordings "would seem to be discoverable as part of the Government's ordinary criminal discovery requirements"); *U.S. v. Coles*, 511 F. Supp. 3d 566, 592–93 (M.D. Pa. 2021) (requiring government to turn over video of charged incident). BWC provides a complete picture of the circumstances on May 9, it bears on

8

the charged elements, and it provides a window into those who were present and what they were doing. The government has represented that it has "turned over all such footage in its possession," that it would provide a list of "identities and rank of any officers and agents present at the time of the arrest of Mayor Baraka," and that it would identify "which of these individuals was equipped with a body camera on the date in question."

But the government has not agreed to explain the absence of any video recording, or to provide any written explanations or reports of submitted by or on behalf of all law enforcement personnel for whom there is no BWC video. That information is material and relevant to Congresswoman McIver's defense.

*First*, there were at least fifteen ICE and HSI personnel at Delaney Hall between 2:42 p.m. and 2:46 p.m. on May 9, but the government produced BWC video for only eleven. Per applicable ICE guidelines, all ICE officers are required to turn on their BWC at the start of "Enforcement Activities," and "should only deactivate the BWC when the scene is secure as determined by the supervisor or team leader." *See* U.S. Immigration and Customs Enforcement, Ice Directive 19010.3: Body Worn Camera (BWC), § 5.5 (Feb. 19, 2025), https://www.ice.gov/doclib/foia/policy/19010.3.pdf. Officers who fail to do so must provide a written statement explaining the reasons they failed to activate their BWC at that point in time. *Id*. "Enforcement Activities" are defined to include "[d]eploying to protect Federal Government facilities" and "[r]esponding to public, unlawful/violent disturbances at ICE facilities." *Id*. § 3.6. Moreover, a video that the government *has* produced contains a recording of a supervisory agent at the scene directing all officers or agents to turn on their BWCs before they started the operation to handcuff Mayor Baraka outside the Delaney Hall gate. That raises questions why certain officers

9

or agents failed to do so, and that there should be written statements explaining the reasons behind officers' failure to activate the BWC.

The government has not produced any such explanations or written statements, and it is not clear that the government has even preserved, collected, or reviewed those materials. These materials are critically important because two of the individuals with no associated BWC footage are V-2 and another agent who violently shoved Congresswoman McIver as she was reentering through the Delaney Hall gate after Mayor Baraka was handcuffed. Congresswoman McIver is entitled to receive these reports if there is anything in them that is helpful to her defense. And if those officers failed to complete such reports, that would be information that would be relevant and helpful to the defense.

### C.     Government Communications Contradicting the Charges

Congresswoman McIver made several requests for the discovery of government communications, all of which the government has declined to produce. Although Congresswoman McIver may seek further relief from the Court to require production of those communications as this case progresses, the Court should at least order the government to disclose now:

VII.A.   *All contemporaneous text, voice, instant, chat or email messages – sent via either Telegram, Signal, or any other communications method, application, or medium – to, from, between, or among anyone present at Delaney Hall on May 9, 2025 and anyone else affiliated or associated with the GEO Group, DOJ, the U.S. Attorney's Office, ICE, HSI, or DHS describing, reflecting, or implying that any government employee present on May 9 at Delaney Hall did not experience or report harm, injury, danger, or fear as a result of Congresswoman McIver's actions.*

VII.B.   *All written, verbal, or other reports or statements – whether or not memorialized – by any government official, individual affiliated with GEO, member of the public, or anyone else that is inconsistent with the charge that Congresswoman McIver knowingly, intentionally, or forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with federal officials on May 9.*

10

These requests concern statements that show a lack of harm, injury, or fear by the alleged victims of the Congresswoman's charged conduct. As detailed above, the 18 U.S.C. § 111(a) charges can be established by proof of physical force sufficient to overcome resistance, harm, or fear. Consequently, any statements by federal officers at the scene showing a *lack* of harm, injury, or fear would be exculpatory. *Brady* thus requires the production of all such information—whether or not memorialized in written or electronic form—describing, reflecting, or implying that any government employee present on May 9 at Delaney Hall did not experience or report harm, injury, danger, or fear as a result of Congresswoman McIver's actions. Indeed, even reports that do not refer at all to such physical impact or emotional reactions would be both probative and exculpatory. It should not be left to the agents, officers, or even the U.S. Attorney's Office to determine which such report might be helpful and which might not.

### D. Internal Policies

Congresswoman McIver requested that the government produce the following policies:

V.A.  *Please produce all policies, manuals, guidelines, memoranda, and training materials (including all electronic or hard copy handouts, power points, syllabi, curricula) from DHS, ICE, HSI or any other federal agency that regulated the conduct and behavior of the federal officers, agents, and employees who were present at Delaney Hall on May 9 regarding:*

   *1. crowd control and/or de-escalations;*

   *2. effectuating arrests, including but not limited to occasions when members of the public or other individuals may be present;*

   *3. safety considerations and use of force in law enforcement operations;*

   *4. deployment of vehicles for crowd control, safety, or arrests; and*

   *5. visits to or inspections of ICE detention or other facilities by members of Congress."*

V.B.  *Please provide any changes to policies, manuals, guidelines, memoranda, and training materials that have been made since May 9, 2025.*

> *V.C.   Provide all records concerning the training that each federal officer and agent present on May 9 received regarding the policies, manuals, guidelines, memoranda, and training materials described above in Section V.A.1-5.*

The government, in its August 11 Letter, refused to produce any materials in response to any of these requests. Ex. M. But as detailed in Congresswoman McIver's Motion to Dismiss Based on Selective Enforcement and Prosecution, and Vindictive Prosecution, the manner in which government officials and agents responded to the events of May 9 created the chaotic scrum surrounding Mayor Baraka's arrest. That government conduct—and whether it comported with stated policy—is part of the necessary context of the Indictment's allegations. Congresswoman McIver is entitled to know whether the law enforcement personnel on site did not follow their own agency's policies or regulations, or if their training was insufficient or not up to date, or if the supervisors on site failed to enforce those requirements. Those records are material to the preparation of her defense, particularly since those failures may well have contributed to the outcome of the day's events and the way that the agents behaved.

Finally, because the videos show that the entire episode surrounding Mayor Baraka's arrest was concocted to interfere with Congresswoman McIver's right and ability to inspect Delaney Hall, she is entitled to the communications between and among law enforcement personnel regarding the preparations for that spectacularly ill-conceived and badly executed operation. Indeed, it is indicative of the bad faith of ICE and HSI leadership. And given the role the V-1 played in these events, that information is critical to the defense. The Court should order the Government to produce it.

## CONCLUSION

For the reasons stated above, the Court should grant Congresswoman McIver's motion to compel discovery.[4]

Dated: August 15, 2025

>ARNOLD & PORTER KAYE SCHOLER LLP
>
>By: _____
>Paul J. Fishman
>Lee M. Cortes, Jr.
>One Gateway Center
>Suite 1025
>Newark, NJ 07102
>Telephone: 973-776-1901
>Paul.Fishman@arnoldporter.com
>Lee.Cortes@arnoldporter.com
>
>*Counsel for Congresswoman LaMonica McIver*

---

[4] In light of ongoing discussions between defense counsel and the U.S. Attorney's Office, there may be additional discovery issues that arise. Moreover, the government's production of additional material may lead to additional questions. Legal and factual issues may also arise as the result of ongoing defense investigation. Accordingly, it may become necessary for the defense to file additional discovery motions. Congresswoman McIver accordingly requests that she be permitted to do so until the date set for trial. Counsel will, of course, notify the government of any intention to do so and will meet and confer with the U.S. Attorney's Office prior to doing so.