UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>LaMONICA McIVER. | Hon. Jamel K. Semper<br><br>Crim. No. 2:25-cr-00388-JKS |

**CONGRESSWOMAN McIVER'S REPLY IN SUPPORT OF MOTION TO RESTRAIN THE GOVERNMENT'S EXTRAJUDICIAL STATEMENTS**

September 25, 2025

ARNOLD & PORTER KAYE SCHOLER LLP
One Gateway Center
Suite 1025
Newark, NJ 07102

*Counsel for Congresswoman LaMonica McIver*

On the Memorandum:

Paul J. Fishman
Lee M. Cortes, Jr.
John M. Fietkiewicz
Samuel F. Callahan
Orion de Nevers
Amanda J. Raines

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1
ARGUMENT ........................................................................................................................ 2
CONCLUSION .................................................................................................................... 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Berger v. United States*,
   295 U.S. 78 (1935)..................................................................................................6

*FBI v. Fikre*,
   601 U.S. 234 (2024)................................................................................................4

*Gannett Co. v. DePasquale*,
   443 U.S. 368 (1979)................................................................................................3

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
   567 U.S. 298 (2012)................................................................................................4

*Kyles v. Whitley*,
   514 U.S. 419 (1995)................................................................................................2

*Neb. Press Ass'n v. Stuart*,
   427 U.S. 539 (1976)................................................................................................3

*Silverthorne v. United States*,
   400 F.2d 627 (9th Cir. 1968) ..................................................................................2

*United States v. Brown*,
   218 F.3d 415 (5th Cir. 2000) ..................................................................................5

*United States v. Davis*,
   904 F. Supp. 564 (E.D. La. 1995)...........................................................................5

*United States v. Grape*,
   549 F.3d 591 (3d Cir. 2008)....................................................................................4

*United States v. LaPage*,
   231 F.3d 488 (9th Cir. 2000) ..................................................................................6

*United States v. Trump*,
   753 F. Supp. 3d 17 (D.D.C. 2024)..........................................................................6

*Waldorf v. Shuta*,
   3 F.3d 705 (3d Cir. 1993) .......................................................................................5

*Williams v. Netherland*,
   181 F. Supp. 2d 604 (E.D. Va. 2002) .....................................................................6

*Williams v. True*,
   39 F. App'x 830 (4th Cir. 2002) ...................................................................................6

**Court Rules**

N.J. Rules Prof'l Conduct, R. 3.6 ........................................................................................7

N.J. Rules Prof'l Conduct, R. 3.8(f) ....................................................................................6

**Other Authorities**

U.S. Dep't of Justice, *Justice Manual*, § 9-5.001(B)(2) ....................................................2

## INTRODUCTION

Congresswoman McIver's opening brief identified five highly inflammatory public statements that the Department of Homeland Security ("DHS") issued before and during the pendency of this prosecution. Those publications labelled Congresswoman McIver a "gutter politician"; grouped her with "Murderers, Rapists, Suspected Terrorists, and Gang Members"; declared her guilty of the charges against her; assailed her expected defenses; fundamentally mischaracterized her actions; and disseminated edited clips of the videos that will likely be evidence in this case. *See* Mem. in Support of Mot. to Restrain Extrajudicial Statements ("Mem.") 9-16, ECF No. 21-1.

The government does not dispute that the posts violated this Court's rules and the prosecution's ethical obligations. Rather, their opposition brief attempts to avoid repercussions for this conduct in two ways. To start, it announces that the U.S. Attorney's Office ("USAO") "has communicated with DHS to request that DHS remove the postings to which Defendant objects." The government then argues that, "[t]o the extent that DHS does so, McIver's motion will be moot." Mem. in Opp. ("Opp.") 78, ECF No. 27.

Similarly, the government acknowledges that jurors could have been exposed to this inflammatory material. But it proposes addressing that obvious impediment to a fair trial by relying only on screening potential jurors "during jury selection." *Id.* The government then argues "no harm, no foul," and contends that neither the government nor the Court needs to take any further action. The government's own brief, however, as well as its conduct, shows why that position is completely wrong. Indeed, the Court's intervention is necessary to force DHS to take down additional offensive posts and statements; to direct that similar conduct does not recur; and to require that the government identify and take down additional statements and posts that may be lurking on the internet or in social media.

1

## ARGUMENT

First, the government's characterization of its own authority over, and responsibility for, the public statements regarding this matter by other Executive Branch officials is both puzzling and troubling. For example, Congresswoman McIver filed her motion seeking the retraction of five specific posts and statements on August 15, 2025. Yet when the government filed its opposition brief on September 15—thirty days later—it was still not in a position to represent that DHS had removed the offensive material. Opp. 78. Even now, ten days later, the government has not yet provided the Court with evidence that DHS has complied. That lack of information hardly renders this motion moot.

The government's brief excuses DHS's recalcitrant and dilatory behavior by disclaiming its own responsibility: "the U.S. Attorney's Office does not exercise authority over DHS even at a local level." Opp. 78. Apparently, that stunning lack of responsiveness by DHS persists, even though the signature block on the government's opposition brief confirms that the USAO is currently operating under the direct control of Deputy Attorney General Todd Blanche, and even though the government acknowledges that Mayor Baraka was arrested only after ICE "consult[ed] with the Deputy Attorney General." Opp. 3.

In any event, the government's excuse is entirely untenable because, as the Justice Manual makes clear, DHS personnel are members of the prosecution team in this matter: "[m]embers of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant." U.S. Dep't of Justice, *Justice Manual*, § 9-5.001(B)(2) (citing *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). In that capacity, DHS officials are not free to ignore the rules of this Court, the Federal Rules of Criminal Procedure, or the Congresswoman's constitutional rights to

a fair proceeding. *See Silverthorne v. United State*s, 400 F.2d 627, 633 (9th Cir. 1968) (the entire "executive arm" of the government is obligated to prevent "the damaging effect of . . . hostile publicity").

But the government's doubts about the USAO's authority here make crystal clear that the Congresswoman's motion is *not* moot. The government's view only confirms that it now falls to this Court to ensure that all Executive Branch personnel with any connection to the case follow the rules and that they do so promptly. *See Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979) (to "safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity"); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 554 (1976) ("The capacity of the jury eventually empaneled to decide the case fairly is influenced by the tone and extent of the publicity."). For that reason, the Court should enter an Order directing DHS to permanently retract the posts, to certify that they have done so, and to represent that the posts will not be republished.

Second, the motion is not moot because DHS, DOJ, and the USAO apparently do not appreciate that the rules against the dissemination of false and prejudicial statements apply to *all* such public comments by the Executive Branch, not just those that Congresswoman McIver identified in her motion. Indeed, on September 22—a week after the government filed its opposition brief—the *New Jersey Globe* (an online news site) reported that the official account of DHS's Assistant Secretary for Public Affairs was continuing to feature material that is quite similar in tone and content to the five cited in this motion. The *Globe* highlighted one such post, which repeated the false claim that Congresswoman McIver and her colleagues "stormed the gate" in a "bizarre political stunt." Cortes Decl. Ex. V; *see also* Cortes Decl. Ex. T. As subsequently discovered by the Congresswoman's counsel, another post on the Assistant Secretary's page also

3

falsely claims that the Members "stormed the gate" and charges that the Members "put law enforcement at risk." Cortes Decl. Ex. U. And six other posts on DHS's official social media account refer to the events of May 9 and the conduct of the Members in derogatory and inflammatory terms. Cortes Decl. Exs. N–S. Even as of this filing, those posts remain fully available to the public. Clearly, DHS either does not appreciate its obligations or is perfectly willing to flout them. That is proof positive that Congresswoman McIver's motion is *not* moot. Rather, Congresswoman McIver's only protection is a Court order directing the government to certify that it has taken down every such post or statement that goes beyond the very narrow comments that the prosecution team is permitted to make.

Third, even if the government provides the Court with such a certification, the government's brief provides no written assurance that DHS and the rest of the prosecution team will refrain from posting again. For that reason, too, Congresswoman McIver's motion is not moot. *See FBI v. Fikre*, 601 U.S. 234, 241 (2024) (government cannot "automatically moot a case" by "suspending its challenged conduct"); *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) ("The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."); *United States v. Grape*, 549 F.3d 591, 597 (3d Cir. 2008) ("mootness is not presumed if the respondent has stopped the offending action, but may resume it at any time").

And prospective relief is clearly necessary to ensure a fair trial. Government agency publications receive an enormous amount of attention and publicity. For instance, just one of the previously-identified social media posts received 1.8 million views, 10,000 likes, 3,000 reposts, and nearly 2,000 comments. Mem. 10. Additional posts would potentially reach millions more. And contrary to the government's suggestion, Opp. 78, neither *voir dire* nor jury instructions can

4

mitigate all resulting harm: "Recognizing that the effect of exposure to extrajudicial, collateral information on a juror's deliberations may be substantial even though it is not perceived by the juror himself and recognizing that a juror's good faith may not be sufficient to counter this effect, courts have concluded that [] assurances from jurors may not be adequate to eliminate the harm done by exposure to prejudicial information." *Waldorf v. Shuta*, 3 F.3d 705, 711 (3d Cir. 1993); *see also United States v. Davis*, 904 F. Supp. 564, 569 (E.D. La. 1995) (It "is difficult, if not impossible, to 'unring a bell,'" when "one is told, 'Don't think about elephants,' the immediate image in the mind is an elephant. So goes the effectiveness of instructions to disregard.").

The government nevertheless insists that "it is appropriate for the 'Court to presume[] that the Government, its attorneys, agents and investigators are aware of and will comply with their ethical obligations concerning trial publicity.'" Opp. 78. Perhaps there are circumstances in which that type of deference is warranted. But not in this case, when DHS personnel and other members of the Executive Branch have already demonstrated their clear contempt for and disregard of the relevant rules. Here, judicial intervention is necessary, because prospectively forbidding prejudicial statements is an appropriate mechanism for securing a fair trial when one side has "already demonstrated a desire to manipulate media coverage to gain favorable attention." *United States v. Brown*, 218 F.3d 415, 429 (5th Cir. 2000).

Finally, the motion is not moot because Congresswoman McIver has moved for an order directing the prosecution to identify, disclose, and remove all other potentially prejudicial public statements or posts about the Congresswoman or her conduct by Executive Branch employees. The government has no meaningful response to that requested relief, except to characterize the request as "onerous" and "clearly overbroad." Opp. 79.

Although it might be onerous for the government to search for statements or posts by all

government employees, it would not be unduly burdensome for the government to canvass all of the agents, officers, and lawyers affiliated in any way with this prosecution, their supervisory chain, and the other senior officials of each agency, including those responsible for public affairs. Indeed, the USAO should already be undertaking such an exercise with respect to its obligations under *Brady* and Rule 16. *See United States v. Trump,* 753 F. Supp. 3d 17, 38, 47, 49 (D.D.C. 2024). Asking the same individuals the government is canvassing for *Brady* material whether they have made, or are aware of, any public statements about this case on any medium or via any application would be neither difficult nor time consuming.

And the alternative the government proposes is untenable: it suggests that the Congresswoman do the legwork and bring any "statement that she finds objectionable" to their attention as she becomes "aware" of them. Opp. 79. That suggestion unfairly and impermissibly shifts the burden to the defendant to search for, identify, and report instances in which Executive Branch personnel have disregarded the rules that apply to them, even though it is the government's duty to ensure Congresswoman McIver receives a fair trial, and it is in the best position to do so. *See, e.g.*, *Berger v. United States*, 295 U.S. 78, 88 (1935) (a prosecutor's "interest . . . is not that it shall win a case, but that justice shall be done"); *United States v. LaPage*, 231 F.3d 488, 492 (9th Cir. 2000) ("A prosecutor has a special duty commensurate with a prosecutor's unique power, to assure that defendants receive fair trials."); *Williams v. Netherland*, 181 F. Supp. 2d 604, 611 (E.D. Va.), *aff'd sub nom. Williams v. True*, 39 F. App'x 830 (4th Cir. 2002) ("A prosecutor has a duty to ensure that the trial process is fair."); N.J. Rules Prof'l Conduct, R. 3.8(f) (emphasis added) ("exercise reasonable care to prevent investigators, law enforcement personnel, employees *or other persons assisting or associated with the prosecutor* in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making" herself).

6

Moreover, it would be far less burdensome for the government to undertake such a task than it would be for Congresswoman McIver to scour the internet for the same material. Indeed, the Congresswoman is not even privy to the identities of all those affiliated with the prosecution team or those in the supervisory structure of the relevant components of DHS and DOJ.

In short, a criminal prosecution is not a game of whack-a-mole that requires a defendant to police the conduct of the prosecution team and other Executive Branch personnel to receive a fair trial. To the contrary, that responsibility falls in the first instance on the prosecution team, and the Court should direct them to search for, identify, and disclose any other instances in which such statements have been published.

## CONCLUSION

The Court should grant Congresswoman McIver's motion and (1) direct DHS to permanently retract the posts identified in the Congresswoman's motion, certify that they have done so, and represent to the Court that the posts will not be republished in the future; (2) order the prosecution team, including all affiliated individuals at DHS and its law enforcement components, to refrain from all similar conduct related to this matter; (3) order the prosecution team, including all affiliated individuals at DHS and its law enforcement components, to abide by all applicable rules and regulations, including those of this Court; and (4) order the government to produce to Congresswoman McIver and the Court every public statement by members of the prosecution team, as well as all affiliated individuals at DHS and its law enforcement components, have made about this matter, regardless whether those statements appeared on official government websites or on other platforms or apps including, but not limited to, *X*, Facebook, Instagram, or Truth Social.

Dated: September 25, 2025

ARNOLD & PORTER KAYE SCHOLER LLP

By: _____
Paul J. Fishman
Lee M. Cortes, Jr.
One Gateway Center | Suite 1025
Newark, NJ 07102
Telephone: 973-776-1901
Paul.Fishman@arnoldporter.com
Lee.Cortes@arnoldporter.com

*Counsel for Congresswoman LaMonica McIver*

8