# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

LaMONICA McIVER.

Hon. Jamel K. Semper

Crim. No. 2:25-cr-00388-JKS

## REPLY IN SUPPORT OF CONGRESSWOMAN McIVER'S
## MOTION TO DISMISS BASED ON LEGISLATIVE IMMUNITY

September 25, 2025

ARNOLD & PORTER KAYE SCHOLER LLP
One Gateway Center
Suite 1025
Newark, NJ 07102

*Counsel for Congresswoman LaMonica McIver*

On the Memorandum:

Paul J. Fishman
Lee M. Cortes, Jr.
John M. Fietkiewicz
Samuel F. Callahan
Orion de Nevers
Amanda J. Raines

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

I.    The Speech or Debate Clause Requires Dismissing the Indictment ....................................... 1

      A.    The Indictment Places Congresswoman McIver's Legislative Acts at Issue ........... 2

      B.    The Government's Arguments to the Contrary are Meritless .................................. 6

II.    The Separation of Powers Requires Dismissing the Indictment ............................................. 9

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bogan v. Scott-Harris*,
   523 U.S. 44 (1998)..................................................................................................10

*Doe v. McMillan*,
   412 U.S. 306 (1973).....................................................................................2, 3, 4, 6

*Eastland v. U.S. Servicemen's Fund*,
   421 U.S. 491 (1975).......................................................................................1, 2, 8, 11

*Gravel v. United States*,
   408 U.S. 606 (1972)................................................................................................2, 4

*Hutchinson v. Proxmire*,
   443 U.S. 111 (1979)................................................................................................2, 3

*Kilbourn v. Thompson*,
   103 U.S. 168 (1880)..................................................................................................10

*Nixon v. Fitzgerald*,
   457 U.S. 731 (1982).................................................................................................6, 11

*In re Sealed Case*,
   80 F.4th 355 (D.C. Cir. 2023).....................................................................................3

*State v. Neufeld*,
   926 P.2d 1325 (Kan. 1996).........................................................................................7

*Supreme Ct. of Virginia v. Consumers Union of U. S., Inc.*,
   446 U.S. 719 (1980)..................................................................................................10

*Trump v. United States*,
   603 U.S. 593 (2024)........................................................................................6, 8, 11

*United States v. Brewster*,
   408 U.S. 501 (1972)....................................................................................................7

*United States v. Feola*,
   420 U.S. 671 (1975)....................................................................................................5

*United States v. Goodwin*,
   440 F.2d 1152 (3d Cir. 1971)......................................................................................5

*United States v. Helstoski*,
    442 U.S. 477 (1979) ..................................................................................................... 3, 7

*United States v. James*,
    888 F.3d 42 (3d Cir. 2018) ............................................................................................. 2

*United States v. Johnson*,
    383 U.S. 169 (1966) ........................................................................... 3, 5, 7, 8, 9, 10, 11

*United States v. Menendez*,
    831 F.3d 155 (3d Cir. 2016) ....................................................................................... 5, 8

*Youngblood v. DeWeese*,
    352 F.3d 836 (3d Cir. 2003) ........................................................................................... 3

## Other Authorities

Compl., *Baraka v. Habba*, 25-cv-06846 (D.N.J. June 4, 2025), ECF No. 1 ................................... 5

Josh Chafetz, Democracy's Privileged Few (2007) ........................................................................ 6

**INTRODUCTION**

The government concedes that the indictment charges Congresswoman McIver for her conduct during a congressional oversight inspection, which the government recognizes is "a core legislative function" and a "clearly legislative act." Opp. 50, 61. That is enough to grant Congresswoman McIver's motion to dismiss, because the Supreme Court has repeatedly admonished that Members of Congress are absolutely immune from criminal prosecutions that would place their legislative acts at issue. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502-03 (1975). To avoid that result, the government asks the Court to ignore nearly every allegation it included in the indictment, and instead focus solely on the narrow snapshot of allegations that the government claims specifically allege criminal conduct. The Supreme Court has rejected that approach. But even if it had not, the government's argument would still fail because the Congresswoman was engaged in legislative conduct from the moment she arrived at Delaney Hall, throughout the isolated moments the government identifies, and until she departed. Indeed, her conduct just outside the gates of Delaney Hall was itself a legislative act because she was preventing ICE's efforts to impair her oversight authority, as well as continuing the oversight she was constitutionally and statutorily authorized to undertake. So even under the government's own theory, the Court should grant Congresswoman McIver's motion and dismiss the indictment.

**ARGUMENT**

**I.     The Speech or Debate Clause Requires Dismissing the Indictment**

The Speech or Debate Clause confers absolute immunity on legislative acts, and the Supreme Court has read that immunity "broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501. Legislative acts include, as the government concedes, congressional oversight and factfinding. Opp. 50. And legislative acts also encompass conduct "necessary to prevent indirect impairment" of legislative activities. *Gravel v. United States*, 408 U.S. 606, 625 (1972). Indeed, it

1

is only natural that a legislator's response to interference with her legislative actions be understood as part and parcel of the legislative act. *See id.* The indictment nevertheless charges Congresswoman McIver for her conduct in the course of a congressional oversight visit, a legislative act that continued throughout her efforts to prevent ICE's impairment of her inspection, and to oversee its blatantly unlawful arrest of Mayor Baraka outside Delaney Hall. The indictment must therefore be dismissed.

And that dismissal must take place before trial. The Speech or Debate Clause shields Members "not only from the consequences of litigation's results but also from the burden of defending themselves." *Hutchinson v. Proxmire*, 443 U.S. 111, 123 (1979). When "a criminal action is instituted by the Executive Branch . . . judicial power is [] brought to bear on Members of Congress and legislative independence is imperiled." *Eastland*, 421 U.S. at 503. An order denying legislative immunity is therefore immediately appealable "under the collateral order doctrine." *United States v. James*, 888 F.3d 42, 43 (3d Cir. 2018). This case illustrates why all that is so: the government challenges the way Congresswoman McIver exercised her "judgment" while she was preventing impairment of her legislative authority and undertaking congressional oversight, necessarily asking the jury "to impose liability" if it "disagree[s] with [her] legislative judgment." *Doe v. McMillan*, 412 U.S. 306, 313 (1973). That is precisely the kind of second-guessing the Speech or Debate Clause forbids.

### A. The Indictment Places Congresswoman McIver's Legislative Acts at Issue

"[O]nce it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference." *Eastland*, 421 U.S. at 502-03 (quoting *Doe*, 412 U.S. at 312). The government nonetheless *concedes* that Congresswoman McIver's inspection of Delaney Hall was a "clearly legislative act." Opp. 61. And as Congresswoman McIver's opening brief makes clear, the indictment's allegations exclusively

2

challenge how Congresswoman McIver "acted" throughout a congressional oversight inspection she was indisputably entitled to undertake. *United States v. Helstoski*, 442 U.S. 477, 489 (1979); *see* Mem. 8-11, 17-19, 21-24. In that context, it is inconceivable that a trial could avoid "mention" of her legislative conduct at Delaney Hall. *Helstoski*, 442 U.S. at 490; *see* Mem. 21-24. The Congresswoman's actions "in the course of exercising that legislative authority are, therefore, privileged from judicial scrutiny," and that is sufficient to dismiss the indictment. *Youngblood v. DeWeese*, 352 F.3d 836, 841 (3d Cir. 2003).

Supreme Court precedent confirms that result many times over, and forbids "carv[ing] out" the "illegitimate" conduct from the broader "legislative act." *In re Sealed Case*, 80 F.4th 355, 373 (D.C. Cir. 2023). In *United States v. Johnson*, 383 U.S. 169, 171, 184 (1966), for example, the Court rejected the government's attempt to extract a charge for "alleged conspiracy" from a floor speech that was "a part of [the] general scheme." Likewise, in *Doe* the Court declined to isolate the mishandling of private data that allegedly took place in the course of preparing a committee report from the publication of the report itself, despite the plaintiffs' insistence that releasing the data was "unnecessary and irrelevant to any legislative purpose." 412 U.S. at 312-13. And in *Hutchinson v. Proxmire*, 443 U.S. 111, 130 (1979), the Court followed the same approach, immunizing a floor speech without segregating the allegedly defamatory statements from the broader legislative conduct. These cases make clear that legislative immunity accrues based on the Member's undertaking of a legislative act, and does not rest on any characterization of a subset of the conduct involved.

The government nonetheless asks the Court to set that precedent aside and consider only whether two discrete allegations in the indictment themselves charge legislative acts: the allegations that Congresswoman McIver struck "Victim-1 with her forearm" and used "her

3

forearms to push past another agent." Opp. 61; see Opp. 58 (similar). But even accepting that narrow view of the indictment, the Congresswoman would still be immune because she was engaged in legislative acts when she allegedly undertook that conduct: Her actions outside Delaney Hall were designed to prevent ICE's impairment of her congressional oversight inspection, and they were a natural continuation of her oversight responsibilities amid an unlawful and dangerous arrest. And any trial in this case would necessarily place the Congresswoman's motive and purpose in conducting those legislative acts at issue.

To begin, Congresswoman McIver's response to ICE's obstruction of her oversight visit, which culminated in the arrest of Mayor Baraka, was an effort to "prevent indirect impairment" of her legitimate legislative oversight—itself "an integral part of the" legislative process entitled to immunity. *Gravel*, 408 U.S. at 625. As Congresswoman McIver's opening brief explained, the Members immediately identified ICE's challenge to the Mayor's presence, and its threat to arrest him, as "creating a problem" that didn't exist and perpetrating an "act of intimidation" and obstruction to impede their oversight work. Mem. 9. ICE's arrest of Mayor Baraka was the most flagrant aspect of the officers' "interference with her authority," and Congresswoman McIver's response to the situation was a proportional and reactive effort to mitigate the obstruction and "effectuate her legislative" prerogatives. Mem. 23. That effort to "prevent indirect impairment" of legislative conduct is itself an immunized legislative act, *Gravel*, 408 U.S. at 625, and the government may not second-guess Congresswoman McIver's "judgment . . . in this respect," *Doe*, 412 U.S. at 313.

On top of that, Congresswoman McIver also followed ICE out the gates of Delaney Hall to continue her oversight. That was not a *deviation* from her oversight agenda; it was *doubling down* on it, responding to circumstances that urgently demanded oversight. On the government's

4

own telling, ICE effected the arrest of Mayor Baraka after ordering him into a crowd of "gathering protestors" that it had claimed "create[d] a safety issue," and then pursuing him into that crowd of civilians "with more than a dozen agents and officers" to complete his arrest in a scrum of their own making. Opp. 2-3. The government *does not dispute* that this was a "baseless, pretextual," and "dangerous" arrest. Mem. 11, 23; *see* Compl. ¶ 49, *Baraka v. Habba*, 25-cv-06846 (D.N.J. June 4, 2025), ECF No. 1 (quoting Magistrate Judge Espinosa). Congresswoman McIver therefore had a self-evident prerogative to continue conducting oversight as ICE agents carried out the operation. And it does not matter that she was outside the Delaney Hall perimeter, or that she was not inspecting the facility itself at that moment. Congresswoman McIver is a member of the House Homeland Security Committee, and that vests her with a responsibility to monitor "*all* Government activities relating to homeland security," jurisdiction that is in no way limited to facility premises themselves, and undoubtedly includes conducting oversight of ICE's unlawful and irresponsible behavior. Mem. 16-17.

Finally, a trial of this case is guaranteed to place the Congresswoman's "purpose" and "motive" in undertaking legislative acts squarely at issue. *United States v. Menendez*, 831 F.3d 155, 167 (3d Cir. 2016). At trial, it would be incumbent upon the government to prove that Congresswoman McIver had the requisite criminal intent. *United States v. Feola*, 420 U.S. 671, 684 (1975). But in cases charging violations of § 111, the government cannot meet that burden if the defendant reasonably believed that her "use of force was defensible and justified." *United States v. Goodwin*, 440 F.2d 1152, 1156 (3d Cir. 1971). As a result, Congresswoman McIver would be entitled to raise the "natural[]" "defense" that she believed her actions to be a defensible and justified means of continuing her legislative oversight and effectuating her legislative authority. *Johnson*, 383 U.S. at 177. For that reason, the government is wrong that Congresswoman McIver's

legislative judgment is "irrelevant to whether she violated § 111." Opp. 59. To the contrary, that issue would be central to this case, turning the trial into precisely the kind of proceeding the Speech or Debate Clause forbids. For all these reasons, even the government's own approach requires dismissal.

None of this means there are no limits on the ability of Members of Congress to prevent impairment of their legislative duties or to complete their oversight responsibilities. But a core "function" of the Speech or Debate Clause is giving legislators "breathing room" to discharge their legislative responsibilities. Josh Chafetz, *Democracy's Privileged Few* 90 (2007). At minimum, then, the Clause must shield Members' proportional and reactive responses to conduct that "would interfere with their ability to do their jobs." *Id.* It cannot be that Congresswoman McIver was stripped of her constitutional protections in the course of a concededly legislative act merely because of her proportional response to ICE's dangerous and obstructive conduct.

### B. The Government's Arguments to the Contrary are Meritless

The government's response offers significant concessions and telling omissions, but no persuasive reason to deny the motion.

***First***, the government seems to suggest that the Speech or Debate Clause can *never* be invoked in § 111 cases because "assaulting federal Agents . . . is inherently non-legislative." Opp. 60. But that is not how legislative immunity works. As the Supreme Court recently reaffirmed in *Trump v. United States*, 603 U.S. 593, 619 (2024), an act is not divested of immunity "merely because it allegedly violates a generally applicable law." Indeed, were it otherwise, legislators "would be subject to trial on 'every allegation that an action was unlawful,' depriving immunity of its intended effect." *Id.* (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 756 (1982)). That result would nullify the Clause's core application: to provide immunity from prosecution for conduct that, "if performed in other than legislative contexts, would in itself be unconstitutional or

6

otherwise contrary to criminal or civil statutes." *Doe*, 412 U.S. at 312-13. Thus, it "is not the alleged criminal act that is examined to determine whether it falls within the sphere of legislative action and whether the legislator's conduct qualifies as a legislative act;" rather, it is whether "the conduct occurred . . . within a legitimate legislative sphere." *State v. Neufeld*, 926 P.2d 1325, 1337 (Kan. 1996). The government cannot evade the Speech or Debate Clause by simply affixing the label "assault" to an indictment—legislative immunity would be meaningless if that were so.[1]

***Second***, the government attempts to wash its hands of the legislative acts that will pervade this trial by claiming that the legislative immunity analysis turns only on "how the government will prove" its case and "not on how the defendant hopes to defend herself." Opp. 58. The government provides no citation for that proposition for a reason: the Supreme Court has explicitly rejected it. Indeed, the government made precisely the same argument in *Johnson*, "contend[ing] that the Speech or Debate Clause was not violated because the . . . defendant, not the prosecution, introduced the" legislative act. 383 U.S. at 184. The Court made short work of that argument, explaining that the legislative immunity analysis considers the entire "judicial inquiry" that would take place at trial. *Id.* at 177. That inquiry includes legislative acts the Member's "defense" would "naturally" place at issue, and it accounts for evidence the defendant would marshal "to rebut the prosecution's case." *Id.* at 177. All that makes sense, because the Clause would be of little value if

---

[1] The Supreme Court's bribery cases are consistent with this understanding: a bribery prosecution can often proceed because the "illegal conduct is taking or agreeing to take money for a promise to act in a certain way" and there "is no need for the Government to show that [the defendant actually] fulfilled the alleged illegal bargain," or otherwise undertook any legislative act. *United States v. Brewster*, 408 U.S. 501, 526 (1972). Yet even in that context, "evidence of a legislative act of a Member" remains barred. *Helstoski*, 442 U.S. at 487. And the prosecution's reliance on the historical record is similarly unavailing. Opp. 60 n.34. Congressman Brooks assaulted Senator Sumner "[t]hree days" after Sumner's speech while Sumner was working at his desk—Brooks was *not* delivering a speech or otherwise undertaking any even arguably legislative act when he committed the assault. Chafetz, *supra* at 216. In fact, the traditional sanction for the assault of one member by another has been "censure." *Id.* at 222.

7

the government could sever its charges from all context to avoid the Speech or Debate Clause and then shift the blame to the legislator for introducing acts necessary to mount a full defense. The Clause thus applies with full force when a trial will inevitably "depend[] upon a showing" of legislative acts by *either* side. *Id.*

**Third**, the government ultimately resorts to "fear mongering on the basis of extreme hypotheticals," *Trump*, 603 U.S. at 640, warning that Congresswoman McIver's position would insulate Members of Congress who "smuggle[] in contraband [and] surreptitiously slip[] [it] to a detainee." Opp. 62. That is a familiar tactic in immunity cases, and the Supreme Court has flatly rejected it. *Trump*, 603 U.S. at 640; *see Eastland*, 421 U.S. at 510 (The Framers recognized that "the broad protection granted by the Clause creates a potential for abuse," but that was "the conscious choice of the Framers' buttressed and justified by history.").

At any rate, the government's hypothetical defendant would likely *not* be entitled to legislative immunity. A Member of Congress who smuggled contraband into a DHS facility and passed it on to a detainee could not credibly claim that the "predominant purpose" of the visit was conducting oversight—and the government certainly would not concede that such a visit was legislative, as it has here. *Menendez*, 831 F.3d at 173. So the visit would not have been an oversight inspection in the first place, and legislative immunity would never have attached. The answer would be the same for almost any hypothetical based on pretextual conduct or premeditated wrongdoing.

Beyond that, Congresswoman McIver is also immunized here because her conduct during Mayor Baraka's arrest itself served the legislative function of preventing impairment of her oversight inspection and overseeing ICE's unsafe and unlawful arrest of the Mayor. Relatedly, Congresswoman McIver's defense at trial would likely include negating criminal intent with proof

8

that she reasonably believed her conduct was a justified means of discharging a legislative act. By contrast, a Member of Congress who slipped contraband to an inmate would have no bona fide argument that the handoff was itself legislative, could not plausibly claim that he was reacting to interference with his duties, and would have no "natural[]" defense that his purpose was to carry out a legislative function. *Johnson*, 383 U.S. at 177. The government's hypothetical thus shows only that, although Congresswoman McIver is immunized here, no parade of horribles will follow.

***Finally***, the government does not even attempt to align this prosecution with the purposes of the Speech or Debate Clause. *See* Mem. 24-26. And it could not. The indictment charges a sitting Member of Congress for conducting oversight of a controversial ICE facility and for continuing to undertake that oversight in the face of ICE obstruction that included deliberate delays, deception, an armed and masked response team of over a dozen agents, and the arrest of the Mayor of Newark in the middle of a crowd of civilians on a baseless trespassing charge. The Congresswoman's actions were a spontaneous and proportional response to a volatile situation that ICE itself created, and any Member of Congress could find themselves in similar circumstances while conducting oversight of ICE facilities. Members of both parties have therefore rightly condemned this prosecution as "a blatant attempt to intimidate Members of Congress and to deter us from carrying out our constitutional oversight duties." Mem. 25-26.

## II. The Separation of Powers Requires Dismissing the Indictment

Violating the Speech or Debate Clause is not the indictment's only constitutional defect: The indictment also breaches the separation of powers doctrine announced in *Trump*, and it should be dismissed for that reason too. Under the principles set out in *Trump*, Members of Congress have absolute immunity for legislative acts under the Speech or Debate Clause and presumptive immunity for official acts under the separation of powers. Crucially, the government does not dispute that no precedent stands in the way of this Court dismissing the indictment on separation

of powers grounds, and it offers no good reason why the Court should not dismiss it on that basis either.

***First***, the government contends that Article I's explicit provision of immunity to Members of Congress is limited to legislative acts under the Speech or Debate Clause, and is thus narrower than Article II's implicit grant of immunity to the President under the separation of powers. Opp. 63-64, 68. But there is nothing in the Speech or Debate Clause itself that suggests such a limitation. And the Supreme Court has reached the opposite result: "the separation-of-powers doctrine," *Sup. Ct. of Va. v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 733 (1980), and "the common law," supply *supplemental* sources of immunity "from liability for [] legislative activities," *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). Indeed, if the full scope of immunities had to be written into the Constitution, there could be no Presidential immunity, to say nothing of the immunities afforded judges and state officers of all stripes. The Clause also nowhere limits immunity to legislative acts, and the historical record shows that legislative immunity was originally understood to be much broader. The earliest understanding of legislative immunity was that it applied to "everything said or done by" a legislator "as a representative, in the exercise of the functions of that office." *Kilbourn v. Thompson*, 103 U.S. 168, 203 (1880). In other words, to official acts. The Speech or Debate Clause only underscores the Framers' occupation with ensuring a broad legislative immunity—it does not subordinate that immunity to the President's.

***Second***, the government contends that the President has a more acute demand for immunity than legislators, purportedly because "the unique concerns attending the Office of the Presidency create a heightened need for a broad concept of immunity." Opp. 67. But if anything, the opposite is true. The imperative for legislative immunity from criminal prosecution has been recognized "throughout United States history" as a crucial safeguard for ensuring legislative "independence

and integrity," whereas executive immunity is an innovation only of the modern era. *Johnson*, 383 U.S. at 178. That is likely because Members face the constant threat of "intimidation . . . by the Executive" *during* their legislative service, *Eastland*, 421 U.S. at 502, and experience shows that executives have long "utilized the criminal and civil law to suppress and intimidate critical legislators," *Johnson*, 383 U.S. at 178. By contrast, presidents face only the more remote prospect of prosecution at the hands of "a new administration" *after* they have fulfilled their duties, a circumstance that has occurred only once in U.S. history. *Trump*, 603 U.S. at 640-41. At minimum, "the constitutional concept of separation of independent coequal powers dictates that a President" should be on "the same footing with . . . other officials whose absolute immunity" the Court has "recognized"—not above them. *Nixon*, 457 U.S. at 763-64 (Burger, C.J., concurring).

***Third***, the government does not seriously dispute that the indictment charges Congresswoman McIver for her official acts, offering only the conclusory assertion that assault does not "qualify" as an official act and making no attempt to rebut the presumption of immunity. Opp. 68. That categorical bar is at odds with Supreme Court precedent for all the reasons already explained, and in fact, *Trump* specifically rejected it, acknowledging that official-act immunity would extend to "assault . . . committed [in an] official capacity." 603 U.S. at 693 (Jackson, J. dissenting); *see id.* at 640 (majority opinion addressing Justice Jackson's dissent). The government concedes that the indictment charges Congresswoman McIver for actions she took "pursuant to [her] constitutional and statutory authority," and it offers no reason why the presumption of immunity should be rebutted in this case. *Id.* at 617. The separation of powers therefore provides a separate and independent basis to dismiss the indictment.

11

Dated: September 25, 2025

                                                  ARNOLD & PORTER KAYE SCHOLER LLP

By: _____
          Paul J. Fishman
          Lee M. Cortes, Jr.
          One Gateway Center | Suite 1025
          Newark, NJ 07102
          Telephone: 973-776-1901
          Paul.Fishman@arnoldporter.com
          Lee.Cortes@arnoldporter.com
          *Counsel for*
          *Congresswoman LaMonica McIver*